Jalisa McGowan
jalisam81@gmail.com
3900 Veterans Drive, Apt. N407
Kent, WA 98032
Telephone: (206) 480-8682
Plaintiff, Self-Represented

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| JALISA MCGOWAN, | Case No. 3:25-cv-01522-JR |
| Plaintiff, | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED AND SUPPLEMENTAL COMPLAINT** |
| v. | |
| CLACKAMAS COMMUNITY COLLEGE; YVONNE SMITH; DAWN HENDRICKS; KATTIE RIGGS; and GERALD (JERRY) LOVELESS, | |
| Defendants. | |

## INTRODUCTION

Plaintiff Jalisa McGowan, appearing without counsel, respectfully opposes Defendants' Motion to Dismiss. The motion should be denied because it does not apply the Rule 12(b)(6) standard to the allegations actually pleaded. It instead isolates each allegation, accepts Defendants' disputed explanations as true, draws factual inferences against Plaintiff, and treats Defendants' eventual reversal of the HS-170 enrollment denial as eliminating the unequal treatment that had already occurred.

The First Amended and Supplemental Complaint alleges materially more than a routine five-week academic review. Plaintiff alleges that she satisfied CCC's published HS-170 prerequisite by completing HS-154; that a white student who lacked both published prerequisites received direct approval from Defendant Smith; that Plaintiff was initially denied; that Plaintiff was subjected to additional considerations that were not published prerequisites; that the explanations for denying her request expanded after she challenged the denial; and that Defendants reversed the denial only after Plaintiff repeatedly challenged the decision, supplied documentary proof, and escalated the matter. First Am. & Suppl. Compl. ("FAC") ¶¶ 19–37, ECF No. 30.

The amended pleading also alleges post-complaint conduct, including subject-matter-specific financial barriers to Plaintiff's efforts to obtain discrimination-related records, a prospective warning regarding future records requests, unsupported AI-related accusations, a 10- out-of-40 assignment score by an instructor who participated in the underlying enrollment dispute, delay and denial concerning the practicum/CWE waiver request, and the failure to provide a timely workable response after Plaintiff informed CCC that anxiety connected to the campus dispute was preventing in-person attendance. FAC ¶¶ 38–72. These allegations must be considered in context and as an alleged course of conduct, rather than dismissed one by one after accepting Defendants' preferred explanations.

## I. LEGAL STANDARD

A complaint survives Rule 12(b)(6) when it contains sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility does not require a plaintiff to establish that liability is more likely than not. A complaint is sufficient when its factual allegations permit the reasonable inference that the defendant is liable. Starr v.

Baca, 652 F.3d 1202, 1216–17 (9th Cir. 2011).

Defendants themselves rely on Iqbal and Twombly, but those decisions do not authorize the Court to choose Defendants' competing factual narrative over Plaintiff's well-pleaded allegations. They require the Court to disregard legal conclusions while accepting pleaded facts as true and determining whether those facts support a reasonable inference of liability. Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 555–56.

In reviewing a motion to dismiss, the Court must accept well-pleaded factual allegations as true and construe them in the light most favorable to Plaintiff. Manzarek v. St. Paul Fire & Marine Insurance Co., 519 F.3d 1025, 1031 (9th Cir. 2008). The Court may not resolve factual

disputes, weigh evidence, or select Defendants' preferred explanation merely because Defendants offer a possible lawful account of their conduct. See Starr, 652 F.3d at 1216–17. A plaintiff need not plead facts conclusively excluding every innocent explanation. Id. Because Plaintiff proceeds without counsel, her pleading must be construed liberally and afforded the benefit of any doubt. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). Although a self-represented plaintiff must allege facts supporting a plausible claim, the pleading may not be subjected to a heightened standard inconsistent with Rule 8. See Erickson v. Pardus, 551 U.S. 89,

93–94 (2007). Defendants' motion repeatedly characterizes their reasons for the challenged conduct as established facts. But Plaintiff's pleading of a stated explanation does not constitute an admission that the explanation was accurate, consistently applied, nonpretextual, or the actual reason for Defendants' actions. At this stage, the Court must consider both the explanation and the factual allegations supporting a contrary inference. See Starr, 652 F.3d at 1216–17.

## II. DEFENDANTS IMPROPERLY REDUCE THE ENROLLMENT CLAIM TO

WHETHER PLAINTIFF ULTIMATELY TOOK HS-170

Defendants repeatedly argue that Plaintiff experienced no injury because she eventually enrolled in HS-170 for Fall 2025. That argument does not address the unequal treatment alleged. Plaintiff alleges that CCC's published HS-170 prerequisite required completion of HS-100 or HS-154 and that the separate 30-credit guideline was described as recommended, not required. FAC ¶¶ 19–20. Plaintiff completed HS-154 in Winter 2025 and therefore satisfied the published prerequisite before requesting enrollment. FAC ¶ 21. Plaintiff further alleges that a white comparator who had completed neither HS-100 nor HS-154 received direct enrollment approval from Smith. FAC ¶¶ 23–25. CCC-produced records allegedly identified the comparator as white and female, showed that she lacked both published prerequisites, and documented Smith's personal directive to Registration to enroll her. FAC ¶¶ 23–25, 47. In contrast, after Plaintiff expressly informed Loveless that she had completed HS-154, Loveless consulted with Smith, reviewed Plaintiff's transcript, and told Plaintiff she had not completed enough core courses. FAC ¶¶ 26–27. Loveless instructed Plaintiff to complete HS-100 and additional degree courses and wait until Spring 2026, even though Plaintiff had already completed the alternative published prerequisite. FAC ¶¶ 27–28. Plaintiff alleges that Defendants' stated considerations later expanded to include part-time status, sequencing, Nevada residency, future in-person attendance, unfinished degree and certificate requirements, local Nevada programs, Oregon credentialing concerns, and broader degree planning. FAC ¶ 31. Plaintiff further alleges that none of those matters was identified as a published prerequisite for HS-170. FAC ¶¶ 31–33. The eventual correction of the denial does not establish that the prior unequal treatment never occurred. Plaintiff's claim is not based only on a permanent inability to take the course. It is based on the allegedly different standards, decision process, and burdens applied to her despite her completion of a published prerequisite. FAC ¶¶ 28–37, 73, 77–82. If Plaintiff has plausibly alleged a completed violation of a legal right, Defendants' later reversal does not necessarily eliminate a damages claim arising from that completed violation. See Uzuegbunam v. Preczewski, 592 U.S. 279, 291–93 (2021) (holding that nominal damages may redress a

completed violation of a legal right). Uzuegbunam does not itself establish that the initial denial was unlawful; rather, it defeats Defendants' broader contention that later enrollment automatically erased any legally cognizable completed injury. Plaintiff alleges that the unequal denial was complete when imposed and that later enrollment did not retroactively eliminate it. FAC ¶¶ 37, 73, 101, 119. The FAC does not allege that Plaintiff's enrollment request remained pending during a neutral five-week review. It alleges that Defendants denied the request, instructed Plaintiff to complete HS-100 and additional coursework despite her completion of the published alternative prerequisite, and maintained the denial while relying on additional considerations that were not published HS-170 prerequisites. FAC ¶¶ 26–35. Defendants reversed the denial only after

Plaintiff repeatedly challenged the decision, supplied documentary proof, and escalated the matter through multiple levels of CCC administration. FAC ¶¶ 29–36. Plaintiff's success in obtaining a reversal through continued persistence does not transform the prior denial into a neutral review or establish that the unequal treatment never occurred.

Defendants nevertheless characterize the five-week denial and subsequent escalation process as a neutral academic review. The FAC alleges otherwise: an initial denial, reliance on additional criteria, different treatment from a white comparator, changing explanations, and reversal only after repeated challenges and documentary proof. FAC ¶¶ 26–36. Whether Defendants' explanations were genuine academic considerations or pretextual justifications cannot be resolved by simply accepting Defendants' characterization at the pleading stage.

## III. THE COMPARATOR ALLEGATIONS ARE PLAUSIBLE

Defendants argue that Plaintiff and the white comparator were not similarly situated because Plaintiff lived outside Oregon and had different degree-planning circumstances. Although Hawn and Earl arose in the employment context, they illustrate that comparator analysis focuses on similarities material to the challenged decision rather than identity in every factual detail. See Hawn v. Executive Jet Management, Inc., 615 F.3d 1151, 1157–58 (9th Cir.

2010); Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1114–15 (9th Cir. 2011).

The relevant decision alleged here was eligibility for HS-170 under CCC's published prerequisite structure. Plaintiff alleges that: 1. both students were enrolled in the Human Services program; 2. both were considered for the same course; 3. both were subject to a materially identical published prerequisite structure; 4. both decisions occurred during the same calendar year; 5. the same Program Lead, Smith, was personally involved in both decisions; 6. Plaintiff had completed HS-154; and 7. the white comparator had completed neither HS-100 nor HS-154.

FAC ¶¶ 23–25, 30, 47, 78, 80, 93, 96–98.

Those allegations plausibly establish similarity in the respects material to the challenged eligibility decision. Indeed, Plaintiff alleges she was more qualified under the published prerequisite because she had completed HS-154 while the comparator had completed neither alternative prerequisite. FAC ¶ 97. Plaintiff does not dispute that she resided in Nevada during the enrollment dispute. FAC ¶¶ 12, 31. She alleges, however, that residence, future attendance, credentialing, possible Nevada

programs, and broader degree planning were not published prerequisites for HS-170. FAC ¶¶ 31– 33. Whether those distinctions genuinely controlled the enrollment decision, were consistently applied, or materially justified the different treatment presents a factual issue that cannot be resolved by assuming Defendants' explanation is true. Moreover, an exactly matched comparator is not the exclusive method of pleading discriminatory intent. Courts examine the totality of the circumstances, including departures from stated procedures, the sequence of events, shifting or inconsistent explanations, and differential treatment. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266–68 (1977); Pacific Shores Properties, LLC v. City of Newport Beach, 730 F.3d 1142, 1158–59 (9th Cir. 2013).

## IV. THE COMPLAINT PLAUSIBLY ALLEGES DISCRIMINATORY INTENT

Direct racial statements are not the only way to plead intentional discrimination. Discriminatory purpose may be established through circumstantial evidence, including differential treatment, departures from normal procedures or substantive criteria, the historical background and sequence of events, and changing explanations. Arlington Heights, 429 U.S. at 266–68; Pacific Shores, 730 F.3d at 1158–59. Defendants' reliance on Yu v. Idaho State University does not warrant dismissal. Yu arose after a bench trial and affirmed the district court's factual determination, based on the developed evidentiary record, that the university had not intentionally discriminated. 15 F.4th 1236, 1242–45 (9th Cir. 2021). It did not address whether allegations of discriminatory intent were sufficient under Rule 12(b)(6), nor did it authorize courts to resolve competing factual inferences against a plaintiff at the pleading stage. Here, Plaintiff alleges differential treatment, departures from published criteria, changing explanations, comparator evidence, and the sequence of events. Taken together and accepted as true, those allegations permit a reasonable inference of discriminatory intent. See Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266–68 (1977); Pacific Shores Properties, LLC v. City of Newport Beach, 730 F.3d 1142, 1158–59 (9th Cir. 2013). The FAC alleges that: 1. Plaintiff is Black. FAC ¶¶ 1, 92. 2. Plaintiff completed HS-154 and therefore satisfied the published alternative prerequisite. FAC ¶¶ 19–21. 3. A white comparator who had completed neither published prerequisite received direct approval from Smith. FAC ¶¶ 23–25, 47. 4. Plaintiff was initially denied after Loveless consulted with Smith. FAC ¶¶ 26–28. 5. Plaintiff was instructed to complete HS-100 and additional core courses despite already completing HS-154. FAC ¶¶ 27–28. 6. Defendants did not identify another published prerequisite that Plaintiff lacked. FAC ¶¶

29–34. 7. The reasons offered for Plaintiff's treatment expanded to include considerations not

published as HS-170 prerequisites. FAC ¶¶ 31–33. 8. Hendricks maintained the denial after receiving repeated notice and documentary proof

that Plaintiff had completed HS-154. FAC ¶¶ 32–35. 9. CCC ultimately acknowledged that the 30-credit guideline was recommended rather than

required. FAC ¶¶ 35–36. 10. CCC stated that it was revising the program language to distinguish recommended criteria from formal prerequisites. FAC ¶ 36.

Taken together, these allegations permit a reasonable inference of intentional unequal treatment. FAC ¶¶ 74–82. Defendants' motion instead accepts every stated academic or administrative explanation as genuine and nonpretextual. That is not the proper Rule 12(b)(6) analysis. See Starr, 652 F.3d at 1216–17.

Defendants also emphasize the absence of a racial statement. But discriminatory intent may be shown by circumstantial evidence. Arlington Heights, 429 U.S. at 266–68; Pacific Shores, 730 F.3d at 1158–59. The alleged combination of a more qualified Black student being denied, a less qualified white student receiving direct approval, reliance on nonmandatory or unpublished considerations, and changing explanations is sufficient to support an inference that

requires factual development.

## V. PLAINTIFF PLAUSIBLY ALLEGES RETALIATION WHEN THE CONDUCT IS

### CONSIDERED IN CONTEXT

In Jackson, a Title IX case, the Supreme Court held that retaliation against a person because that person complained of sex discrimination is a form of intentional discrimination. Jackson v. Birmingham Board of Education, 544 U.S. 167, 173–74, 178–80 (2005). Plaintiff relies on Jackson's retaliation principle by analogy in the Title VI context. Likewise, although Emeldi arose under Title IX, the Ninth Circuit recognized in the educational setting that

faculty and institutional actions allegedly taken because a student complained of discrimination may support a retaliation claim notwithstanding their academic setting. Emeldi v. University of Oregon, 698 F.3d 715, 724–27 (9th Cir. 2012).

Defendants isolate each later event and argue that no single event is sufficient. The FAC, however, alleges an interconnected sequence of conduct following Plaintiff's discrimination complaints, records requests, demand letter, and continuing petitioning activity. FAC ¶¶ 38–72, 83–90.

## A. Protected activity

Plaintiff alleges that she challenged the HS-170 decision, complained of racial discrimination and unequal treatment, filed institutional and external complaints, sought review outside CCC, requested records concerning the comparator and enrollment practices, pursued a
fee waiver and review, submitted a demand letter and tort-claim notice, and continued petitioning
CCC concerning the dispute. FAC ¶¶ 38–41, 46, 84–85, 110.
Those activities constitute opposition to perceived discrimination and petitioning for government redress. See Jackson, 544 U.S. at 173–74; Emeldi, 698 F.3d at 724–25.

## B. Adverse action

Plaintiff alleges more than ordinary inconvenience. She alleges that: 1. Riggs transmitted a $1,913.23 estimate for discrimination-related records and stated that the request would remain on hold unless the waiver was granted or the amount was paid. FAC ¶¶ 42, 86, 111. 2. The estimate included one hour of Riggs's own time at $123.46 per hour. FAC ¶¶ 42, 86, 111. 3. Riggs participated in representations concerning the existence, fulfillment, and closure of discrimination-related records. FAC ¶¶ 43–44, 86, 112. 4. Riggs later issued a prospective, subject-matter-based warning that additional requests concerning Plaintiff's situation, advising, Human Services courses, or CCC's records processing would receive cost estimates.

FAC ¶¶ 45, 86, 112. 5. Loveless introduced an unsupported AI-related concern into the grading process, applied the concern to both Plaintiff's paper and her clarification email, and provided no tool name, report, testing date, or probability score. FAC ¶¶ 48–55, 86, 114. 6. Loveless assigned and maintained a score of 10 out of 40 points without disclosing whether the unresolved AI concern affected the grade. FAC ¶¶ 51–55, 86, 114. 7. CCC left the practicum/CWE waiver unresolved during a time-sensitive placement opportunity. FAC ¶¶ 56–62. 8. CCC did not communicate a waiver decision before Plaintiff withdrew, and the first stated basis for denial was not provided until April 6, 2026. FAC ¶¶ 62, 72. 9. Three administrators failed to respond after Plaintiff warned that anxiety connected to the CCC dispute was interfering with attendance and expressly sought guidance, supports, adjustments, or another pathway to remain enrolled. FAC ¶¶ 67, 69–71. 10. Disability Resources supplied only a brief general response without identifying available supports, explaining the formal process, or addressing Plaintiff's questions about temporary measures and consultation. FAC ¶¶ 68–71.

Although Ollier arose under Title IX, it applies the familiar objective retaliation standard: an act is materially adverse when it might dissuade a reasonable person from making or supporting a discrimination complaint. See Ollier v. Sweetwater Union High School District, 768 F.3d 843, 868–69 (9th Cir. 2014). First Amendment retaliation similarly requires an action that would chill or deter a person of ordinary firmness. Arizona Students' Association v. Arizona Board of Regents, 824 F.3d 858, 867 (9th Cir. 2016). Defendants' reliance on Arizona Students' Association therefore does not support

dismissal merely because Plaintiff continued to object. The decision states an objective ordinary- firmness standard and does not require proof that the particular plaintiff was actually silenced. 824 F.3d at 867. The retaliatory action need not be independently unlawful. Government authority that may generally be exercised lawfully can still become unconstitutional when used to punish protected expression or petitioning. See Arizona Students' Association, 824 F.3d at 867–69. Thus,

the fact that Oregon law may generally authorize reasonable records fees does not conclusively establish that the challenged fee-related decisions, prospective warning, or method of administration were nonretaliatory. Defendants also argue that Plaintiff continued complaining and therefore was not chilled. But a plaintiff need not show that she was actually silenced. The test is objective: whether the conduct would chill a person of ordinary firmness. Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999); Arizona Students' Association, 824 F.3d at 867. Plaintiff's persistence therefore does not defeat the claim.

### C. Causation

Plaintiff does not rely on timing alone. She alleges continuing protected activity, Defendants' knowledge and involvement, the subject-matter connection between the records restrictions and her discrimination complaints, Loveless's participation in the underlying HS-170 dispute, later unsupported AI accusations, a low score, unresolved institutional processes, and the absence of a meaningful response after CCC was warned that her continued enrollment was in jeopardy. FAC ¶¶ 38–72, 85–90, 110–16.

There is no rigid rule that a three- or four-month interval necessarily defeats retaliation causation. The Ninth Circuit has explained that even periods of three to eight months may support an inference of retaliation when considered with knowledge and other surrounding circumstances. Coszalter v. City of Salem, 320 F.3d 968, 977–78 (9th Cir. 2003). Courts must consider the entire sequence, including continuing protected activity, knowledge, intervening events, and changed treatment. Id.; see also Emeldi, 698 F.3d at 726–27. As to Riggs, Plaintiff alleges that her records and fee-waiver requests expressly identified discrimination and unequal treatment; Riggs personally transmitted and implemented the estimate; participated in fulfillment and closure communications; defended CCC's position during external review; later confirmed that the white comparator received an exception; and issued a prospective warning concerning additional requests tied to Plaintiff's dispute. FAC ¶¶

41–46, 86, 88, 111–12, 115–16. As to Loveless, Plaintiff alleges that he personally participated in the original transcript review and denial; received Plaintiff's May 28 communication disputing the use of the 30-credit recommendation as a requirement; was included in communications concerning her continued challenges; was copied when Hendricks acknowledged that Plaintiff was correct; and personally issued the enrollment permission reversing the original decision. FAC ¶¶ 27–29, 35, 41, 48, 88, 113. Plaintiff additionally alleges on information and belief that, before the October and November 2025 grading events, Loveless learned that Plaintiff's challenge included allegations of unequal and racially discriminatory treatment. FAC ¶¶ 41, 88, 113, 116. That allegation is not based solely on Loveless's employment; it is based on his direct participation, receipt of communications, the subject matter and timing of the later events, and internal notice or communications principally within Defendants' possession. Id.

At the pleading stage, a plaintiff may allege facts on information and belief where the relevant information is peculiarly within the defendants' possession, so long as the allegation is

supported by facts making the inference plausible. See Park v. Thompson, 851 F.3d 910, 928–29 (9th Cir. 2017). Whether internal communications establish the precise scope and timing of Loveless's knowledge is appropriately addressed through discovery.

## VI. THE LOW ASSIGNMENT SCORE IS NOT ALLEGED AS A MERE REQUEST FOR

JUDICIAL REGRADING

Plaintiff does not ask the Court to substitute its academic judgment for an instructor's ordinary grading decision. The score is alleged as part of a retaliation claim. FAC ¶¶ 55, 114. The FAC alleges that Loveless participated in the earlier enrollment dispute, had actual knowledge that Plaintiff persistently challenged the decision in which he participated, and later introduced AI-related scrutiny into the grading process. FAC ¶¶ 27–29, 35, 41, 48–55, 113–16.

On October 20, 2025, Plaintiff asked Loveless to identify any AI-detection tool, provide a report, disclose when the work was tested, and provide a probability score or supporting information. FAC ¶ 48. Loveless did not provide that information and instead stated that Plaintiff was probably overusing Grammarly. FAC ¶ 49. After Plaintiff disputed the accusation and requested reconsideration under the rubric, Loveless stated that much of her work, including her clarification email, appeared largely AI-generated, again without identifying a tool, report, testing date, or probability score. FAC ¶¶ 50–53. Loveless maintained the 10-out-of-40 score and supplied a rubric-based explanation, but allegedly never disclosed whether the unresolved AI concern affected the grade. FAC ¶¶ 54–55. Plaintiff expressly alleges that her claim is not based merely on believing the paper deserved a higher score. FAC ¶¶ 55, 114. Defendants may ultimately establish a legitimate academic reason for the score. But academic deference does not require the Court to assume at the pleading stage that every explanation attached to an academic decision was genuine and nonretaliatory. In Emeldi, the Ninth Circuit permitted a student's retaliation theory to proceed where disputed faculty and academic decisions allegedly followed discrimination complaints. 698 F.3d at 724–27. Cases recognizing academic discretion do not create categorical immunity from discrimination or retaliation review. See Regents of University of Michigan v. Ewing, 474 U.S. 214, 225–26 (1985); Oyama v. University of Hawaii, 813 F.3d 850, 860–63 (9th Cir. 2015). Plaintiff is not asking the Court to independently grade the assignment. The issue is whether academic authority was exercised with a retaliatory motive. FAC ¶¶ 55, 114–16.

Defendants also cite Board of Curators of the University of Missouri v. Horowitz, 435 U.S. 78 (1978), but Horowitz addressed procedural due-process review of an academic dismissal. It does not hold that academic decisions are immune from claims alleging intentional race discrimination or retaliation. Likewise, Ewing counsels restraint when reviewing a genuinely academic judgment; it does not require the Court to presume at the pleading stage that a challenged explanation was genuine rather than pretextual. See Ewing, 474 U.S. at 225.

Neither Horowitz nor Ewing grants educational institutions categorical immunity from claims alleging intentional discrimination or retaliation. Those decisions address judicial restraint toward good-faith academic judgments, not allegedly pretextual academic actions undertaken for unlawful reasons.

## VII. DEFENDANTS' CHARACTERIZATION OF PLAINTIFF'S WITHDRAWAL AS

ENTIRELY SELF-INFLICTED IS A DISPUTED INFERENCE

Defendants argue that Plaintiff independently chose not to attend classes, declined accommodations, withdrew, and lost the scholarship. The FAC supports a different reasonable inference. Plaintiff alleges that she continued pursuing a potential 180-hour placement while the waiver was pending and had an interview scheduled for January 5, 2026. FAC ¶¶ 56–60. On the interview date, CCC stated that the request remained under review and that appropriate parties and policies still needed to be consulted. FAC ¶ 60.

Plaintiff alleges that she did not attend because she was waiting to learn whether the substantial 180-hour placement was required; that she would have attended had CCC timely denied the waiver; and that the placement would not have been required had CCC granted the waiver. FAC ¶ 61. Elizabeth Gregory Home ended the opportunity on January 7 while CCC still had not communicated a decision. FAC ¶ 62. Plaintiff also alleges that on January 21, 2026, she informed three CCC administrators that anxiety connected to the ongoing dispute was preventing in-person attendance and expressly

requested guidance, supports, adjustments, or another workable pathway that would allow her to remain enrolled. FAC ¶ 67. She separately contacted Disability Resources, disclosed diagnosed anxiety, PTSD, and depression, explained the attendance barrier, and asked about available supports, resources, temporary measures, consultation, and documentation requirements. FAC ¶ 68. Plaintiff's statement that she was seeking information and guidance rather than requesting

a specific accommodation at that stage does not establish that she rejected all accommodations or assistance. FAC ¶ 68. She alleges that she was trying to learn what supports and processes were available before formulating a formal request. Id. The three administrators did not respond before her withdrawal or thereafter. FAC ¶ 69. Disability Resources supplied a brief general response that did not identify available support, explain the formal accommodation process, state what documentation was needed, invite an individualized consultation, or address temporary supports. FAC ¶ 69. Plaintiff alleges that she did not intend to abandon the program; repeatedly sought reconsideration and guidance; warned CCC that her continued enrollment was in jeopardy; and would have remained enrolled had CCC meaningfully engaged and provided a workable pathway. FAC ¶¶ 70–71. She withdrew only after those efforts and lost an already-awarded $2,425 scholarship. FAC ¶¶ 71–72, 90, 120. These allegations do not require the Court now to find that CCC was the sole cause of the withdrawal. They plausibly allege that CCC's delayed and absent responses materially contributed to and foreseeably caused the withdrawal and related losses. FAC ¶¶ 71–72, 87–90.

Defendants' contrary position presents a causation dispute, not a fact that must be accepted on a

motion to dismiss.

## VIII. THE TITLE VI CLAIMS AGAINST CCC SHOULD NOT BE DISMISSED

Title VI prohibits intentional race discrimination in federally funded programs. 42 U.S.C. § 2000d; Alexander v. Sandoval, 532 U.S. 275, 280–81 (2001). Plaintiff alleges that CCC is a public college receiving federal financial assistance. FAC ¶¶ 13, 75. The FAC plausibly alleges intentional race discrimination by asserting that CCC, through Smith and other program officials, subjected Plaintiff to more restrictive eligibility standards than a white comparator despite Plaintiff's stronger qualifications under the published rule. FAC ¶¶ 74–82. Specifically, Plaintiff alleges that Smith exercised delegated enrollment authority, directly

approved the white comparator, participated in Plaintiff's denial, and did not provide Plaintiff the same immediate approval despite her completion of HS-154. FAC ¶¶ 14, 23–25, 30, 77–80. Plaintiff further alleges that CCC applied additional unpublished or nonmandatory criteria to her and later acknowledged that the 30-credit guideline was not a formal prerequisite. FAC ¶¶ 28–36, 79. Defendants rely heavily on Plaintiff's eventual enrollment. That fact may bear on the nature and amount of damages, but it does not automatically eliminate the alleged completed unequal treatment. FAC ¶¶ 37, 73, 82. The Title VI retaliation claim is likewise supported by allegations that Plaintiff opposed perceived race discrimination, CCC had actual institutional notice, and materially adverse conduct followed. FAC ¶¶ 83–90. Retaliation against a person because she complained about discrimination is itself intentional discriminatory treatment. See Jackson, 544 U.S. at 173–74, 178–80. The Ninth Circuit's educational retaliation decisions further establish that academic and institutional actions are not immune from examination merely because they occur in an educational program. See Emeldi, 698 F.3d at 724–27; Ollier, 768 F.3d at 866–69. Whether CCC's explanations were genuine, whether the comparator differences were material, whether the alleged conduct would deter a reasonable student, and whether the events were causally connected to Plaintiff's protected activity involve factual questions that cannot be resolved by adopting Defendants' preferred inferences at the pleading stage.

## IX. THE EQUAL PROTECTION AND SECTION 1981 CLAIMS ARE PLAUSIBLY

PLEADED

The Equal Protection Clause prohibits government officials from intentionally treating a person differently because of race. See Arlington Heights, 429 U.S. at 265–66; Elliot-Park v. Manglona, 592 F.3d 1003, 1006–09 (9th Cir. 2010). Plaintiff alleges personal participation rather than supervisory liability. FAC ¶¶ 91–101.

Smith allegedly possessed enrollment authority, directly approved the white comparator despite her lack of both prerequisites, consulted with Loveless regarding Plaintiff, and

participated in or approved Plaintiff's denial despite her completion of HS-154. FAC ¶¶ 14, 23– 30, 77–80, 93, 98. Loveless allegedly reviewed Plaintiff's transcript, consulted with Smith, communicated and enforced the denial, and instructed Plaintiff to complete HS-100 and additional courses even though she had completed HS-154. FAC ¶¶ 17, 26–29, 94, 98. Hendricks allegedly received written notice from the beginning of her involvement that Plaintiff had completed HS-154, personally participated in the June 5 eligibility meeting, received repeated challenges and documentary proof, and maintained the denial without identifying a published prerequisite Plaintiff lacked until June 30. FAC ¶¶ 15, 32–35, 95, 98. The fact that Hendricks eventually corrected the decision does not negate her alleged prior participation. FAC ¶¶ 34–35, 95. If the earlier conduct constituted a completed equal-protection violation, a later reversal may affect damages but does not automatically eliminate the

completed claim. See Uzuegbunam, 592 U.S. at 291–93.

Even if prospective relief were unavailable, a claim for nominal or compensatory damages for an alleged completed violation may preserve a live controversy. See Uzuegbunam v. Preczewski, 592 U.S. 279 (2021). Plaintiff further alleges that she and the white comparator were similarly situated in the material circumstances relevant to HS-170 eligibility and that Plaintiff was more qualified under

the published rule. FAC ¶¶ 96–97. The combination of comparator treatment, reliance on additional criteria, Smith's involvement in both decisions, and changing explanations supports a plausible inference of intent. FAC ¶¶ 98–101; see Arlington Heights, 429 U.S. at 266–68; Pacific Shores, 730 F.3d at 1158–59. Section 1981 protects the right to make and enforce contracts and to enjoy the benefits, privileges, terms, and conditions of the contractual relationship without racial discrimination. 42

U.S.C. § 1981(a)–(b). Claims against state actors are enforced through § 1983. Yoshikawa v. Seguirant, 74 F.4th 1042, 1047–50 (9th Cir. 2023) (en banc). Plaintiff alleges that she paid or incurred tuition and fees accepted by CCC in exchange for educational courses and program

services under published requirements. FAC ¶ 103. She does not allege an unconditional contractual entitlement to any preferred sequence. Instead, she alleges that Defendants impaired the benefits, privileges, terms, and conditions of the existing educational relationship by imposing more restrictive eligibility standards on her than on a similarly situated white student because of race. FAC ¶¶ 103–06. Plaintiff expressly alleges but-for causation: absent her race, Defendants would not have imposed the more restrictive standards. FAC ¶ 106. That allegation is supported by the detailed comparator, prerequisite, decisionmaker, and changing-explanation facts pleaded elsewhere. FAC ¶¶ 19–37, 93–98, 103–06. At the pleading stage, those facts are sufficient to permit the inference required under Comcast Corp. v. National Association of African American-Owned Media, 589 U.S. 327, 341 (2020). Defendants' reliance on Comcast does not require Plaintiff to prove but-for causation in her pleading or eliminate all other possible contributing considerations. At this stage, Plaintiff must plausibly allege that the challenged unequal treatment would not have occurred but for race. The pleaded comparison between Plaintiff's satisfaction of a published prerequisite and Smith's direct approval of a white student who lacked both published prerequisites supports that inference.

## X. THE FIRST AMENDMENT RETALIATION CLAIMS SHOULD NOT BE

DISMISSED

To state a First Amendment retaliation claim, Plaintiff must allege that she engaged in protected activity, that Defendants took action that would chill a person of ordinary firmness, and that the protected activity was a substantial or motivating factor in the challenged conduct. Arizona Students' Association, 824 F.3d at 867.

### A. Riggs

The claim against Riggs is not based merely on the existence of a statutorily authorized fee. Plaintiff alleges that her records requests expressly concerned discrimination, unequal

treatment, enrollment exceptions, and the white comparator. FAC ¶¶ 38–45, 110–12. Riggs allegedly personally transmitted the $1,913.23 estimate, imposed a financial hold unless the waiver was granted or the amount paid, included her own billed time, participated in fulfillment and closure decisions, defended CCC's position during outside review, and issued a prospective warning applying cost estimates to future requests concerning Plaintiff's dispute. FAC ¶¶ 42–45, 86, 88, 111–12, 115–16. Plaintiff further alleges that Riggs initially participated in a representation that no exception records existed, but later confirmed that the white comparator received a waiver, override, or prerequisite exception. FAC ¶¶ 43, 112. Plaintiff does not presently allege that Riggs knowingly made a false statement, but alleges that the sequence, inconsistency, and subject- matter-based prospective warning support an inference of retaliation. FAC ¶¶ 43, 112, 116.

An otherwise lawful governmental mechanism may support a retaliation claim when allegedly used because of protected speech or petitioning. See Arizona Students' Association, 824

F.3d at 867–69. The general availability of records fees therefore does not establish that the particular warning, hold, closure decisions, and administration alleged here were necessarily nonretaliatory.

### B. Loveless

Plaintiff alleges that Loveless knew she had repeatedly opposed and successfully challenged the enrollment decision in which he personally participated. FAC ¶¶ 27–29, 35, 41, 48, 110, 113. Her First Amendment theory does not depend exclusively on proving that Loveless knew every challenge was expressly framed as race discrimination. FAC ¶¶ 110, 113, 116. Plaintiff alleges that he had actual knowledge of her protected speech and petitions challenging governmental decision-making because he personally participated in the challenged decision,

received her written objections, was included in the correction communications, and ultimately issued permission to register. FAC ¶¶ 29, 35, 41, 48, 113. Plaintiff also alleges on information and belief that Loveless learned of the race- discrimination allegations before the AI and grading events. FAC ¶¶ 41, 88, 113, 116. Whether internal communications establish that additional knowledge is a discovery issue. After that protected activity, Loveless allegedly introduced unsupported AI-related scrutiny into Plaintiff's grading process, extended the suspicion to her clarification email, provided none of the requested detection information, and maintained a 10-out-of-40 score without disclosing whether the unresolved accusation affected it. FAC ¶¶ 48–55, 114–16. Plaintiff alleges that the timing, Loveless's knowledge, his unsupported academic- integrity assertions, the absence of supporting information, and the failure to disclose the accusation's effect on the grade support an inference that Plaintiff's protected activity was a substantial or motivating factor. FAC ¶ 116.

Defendants' competing academic explanation may ultimately prevail, but the Court cannot resolve the disputed motive against Plaintiff at the pleading stage. See Emeldi, 698 F.3d at 724–27; Starr, 652 F.3d at 1216–17.

## XI. QUALIFIED IMMUNITY DOES NOT REQUIRE DISMISSAL OF ALL CLAIMS

Qualified immunity applies only if the facts alleged do not establish a constitutional violation or if the constitutional right was not clearly established. Pearson v. Callahan, 555 U.S. 223, 231–32 (2009). The constitutional rights must be defined with sufficient specificity, but prior authority need not involve identical facts. Officials must have fair warning that their conduct is unconstitutional. Hope v. Pelzer, 536 U.S. 730, 739–41 (2002). In an obvious case, general constitutional principles may provide sufficient notice even without a materially identical prior decision. Taylor v. Riojas, 592 U.S. 7, 8–9 (2020).

Plaintiff does not assert a generalized constitutional right to immediate course enrollment, a preferred sequence, a discretionary waiver, or a particular grade. FAC ¶¶ 100, 104, 114. She

alleges the more specific rights: 1. not to be intentionally subjected by public officials to more restrictive eligibility

standards because of race; and 2. not to suffer materially adverse governmental action because she engaged in protected

speech or petitioning activity.

FAC ¶¶ 100, 110–18. The prohibition against intentional race discrimination by government officials was clearly established. Elliot-Park, 592 F.3d at 1008–09. No reasonable public official could believe that intentionally providing materially different governmental treatment because of race was lawful. Id.

The First Amendment prohibition against government retaliation for protected speech and

petitioning was also clearly established. See Mendocino Environmental Center, 192 F.3d at 1300;

Coszalter, 320 F.3d at 974–78; Arizona Students' Association, 824 F.3d at 867–69.

Defendants' qualified-immunity argument depends substantially on characterizing the challenged conduct as neutral academic or administrative judgment. The FAC alleges that those explanations were pretextual and that the challenged actions were undertaken with discriminatory or retaliatory intent. FAC ¶¶ 74–118. At the pleading stage, the Court must evaluate qualified immunity using the facts alleged in the complaint, not Defendants' competing account. See Keates v. Koile, 883 F.3d 1228, 1234–35 (9th Cir. 2018).

The qualified-immunity decisions cited by Defendants do not permit the Court to resolve disputed motive or accept Defendants' version of the events on a Rule 12(b)(6) motion. Even where immunity is raised at the pleading stage, the analysis proceeds on the facts plausibly alleged and reasonable inferences drawn in Plaintiff's favor. See Keates, 883 F.3d at 1234–35.

At minimum, dismissal based on qualified immunity should be limited to claims and defendants for whom the pleaded facts fail to establish a clearly defined constitutional

violation. Qualified immunity does not apply to CCC's Title VI liability and does not justify dismissal of all claims or all forms of relief.

## XII. DISMISSAL WITH PREJUDICE IS NOT WARRANTED

Defendants request dismissal with prejudice, but dismissal without leave to amend is improper unless it is clear that the complaint cannot be saved by alleging additional facts. Lopez v. Smith, 203 F.3d 1122, 1127, 1130–31 (9th Cir. 2000) (en banc).

Rule 15's policy favoring amendment is applied with "extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051–52 (9th Cir. 2003). Prejudice to the opposing party is the most important factor, and absent prejudice or another strong reason, there is a presumption in favor of leave. Id. Futility supports denial only when no additional allegations

could cure the identified deficiency. See Sonoma County Association of Retired Employees v. Sonoma County, 708 F.3d 1109, 1117–18 (9th Cir. 2013).

The FAC includes substantial new facts and later events that were not part of the original pleading, including the Loveless grading events, the waiver process, the lost placement opportunity, the January 2026 requests for assistance, withdrawal, and scholarship loss. FAC ¶¶ 48–72. Those supplemental events have not previously been tested under the pleading standard as alleged in the complete FAC.

If the Court concludes that any claim requires greater specificity concerning injury, comparator materiality, decisionmaker knowledge, causation, the effect of the assignment score, the responsible waiver decisionmaker, or the relationship between CCC's response and Plaintiff's withdrawal, Plaintiff respectfully requests targeted leave to amend. At minimum, the Court should distinguish among individual claims, defendants, injuries, and remedies rather than dismissing the entire action with prejudice. A deficiency concerning

prospective relief, a particular defendant, a particular retaliatory act, or one category of damages would not require dismissal of every discrimination and retaliation claim.

**CONCLUSION**

Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss. Alternatively, if the Court identifies a deficiency in any claim, Plaintiff requests leave to amend rather than dismissal with prejudice.

DATED: August 12, 2026.

Respectfully submitted,

/s/ Jalisa McGowan

Jalisa McGowan

3900 Veterans Drive, Apt. N407

Kent, WA 98032

Telephone: (206) 480-8682

Email: jalisam81@gmail.com

Plaintiff, Self-Represented

**CERTIFICATE OF SERVICE**

I certify that on August 12, 2026, I served the foregoing Plaintiff's Response in Opposition to Defendants' Motion to Dismiss through the Court's CM/ECF system upon all counsel of record.

/s/ Jalisa McGowan

Jalisa McGowan